# Federal Defenders
## OF NEW YORK, INC.

Eastern District
16 Court Street-3rd Floor, Brooklyn, NY 11241
Tel: (718) 330-1200 Fax: (718) 855-0760

---

Leonard F. Joy
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

October 25, 2010

The Honorable Roslynn R. Mauskopf
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

Re: <u>United States v. Joan Vivienne Harris, 10 CR 382</u>

Dear Judge Mauskopf:

Joan Harris, through counsel, submits this sentencing memorandum in anticipation of her sentencing on November 4, 2010. On July 9, 2010, Ms. Harris pled guilty pursuant to an agreement with the government to Count One of the indictment, attempted illegal re-entry, in violation of 8 USC §1326(a). For the reasons set forth below, we respectfully request that the Court either downwardly depart or impose a non-guidelines sentence of time-served.

Joan Harris has overcome nearly unimaginable personal strife throughout her life to become a loving mother, a woman of deeply held convictions, and a positive force in her community. Ms. Harris has been in confinement since her birthday, April 25, 2010. By the time your honor sentences her this Friday, she will have spent nearly six months in incarceration. The individual circumstances of this case fall far outside the heartland of typical illegal re-entry cases. In light of the unique facts of this case, as well as the extraordinary §3553 circumstances present in Ms. Harris's life, we ask the Court to view her six months of incarceration as sufficient, but not greater than necessary, to achieve the goals of sentencing.

## I. PERSONAL BACKGROUND

For her entire life, Joan Harris's life has been marred by neglect, poverty, and physical and emotional abuse. Yet, despite all that she has endured. She has atoned for her past mistakes, and she has worked to reclaim her life. She has struggled so as not be defined by her past mistakes. The Joan Harris who will appear before the Court on Friday is a model of perseverance, a person who recognizes the folly of her past mistakes. A person who made a terrible mistake out of love of her family.

As the pre-sentence report notes, Ms. Harris was born on April 25, 1956 in a poor and desolate

neighborhood in Kingston, Jamaica. As the PSR notes, "although her childhood home contained electricity, it worked sporadically, and the family utilized a communal outhouse." PSR ¶32. Shortly after her birth, her father, Sperjon Harris, abandoned the family and moved to England. Her father's abandonment was only the first in a series of the ultimately failed and abusive relationships she would endure throughout her life.

Of the many struggles Joan has faced in her life, she is perhaps most reticent to speak of those during her childhood. Not only did her childhood lack basic material necessities such as school lunches, it was also short of parental attention and familial guidance. After her father moved to England, he maintained no contact with her and provided no financial assistance. As such, she was left with a mother, Cynthia Reed, who resented her for no good reason except that she was an overweight child. As the PSR describes in vivid detail, Cynthia Reed physically beat young Joan for her weight frequently. In one incident, the beating was so severe that Ms. Reed actually broke young Joan's arm. PSR ¶33. One can only speculate about the toll these repeated childhood beatings exacted upon the fragile ego of a young girl. Throughout her childhood, young Joan wanted nothing but her mother's love and approval. All she knew was rejection. At 15 years old, like Joan's father, Cynthia Reed abandoned her too and fled to Canada.

For the rest of her childhood, young Joan Harris resided in the poorest part of Kingston with a caretaker, "Ms. Spence," who also failed to provide even the most basic necessities for her. Consequently, throughout her teens, Ms. Harris often went without food and proper clothing. Although her mother sent financial support home, "Ms. Spence" selfishly and immorally withheld that support from Joan. She essentially left Joan Harris to fend for herself.

Ms. Harris's adult life began at 17 with a romantic relationship with Clinton Jackson. Her time with Mr. Jackson was only the first in what has been an adult life full of physically and emotionally abusive romantic relationships. As the PSR notes, Mr. Jackson, like her mother, beat Ms. Harris so frequently that she often ended up in the hospital. When she was fortunate enough to escape that relationship, she ended up with Victor Greaves, who frequently cheated on her with other women. We need not recount the subsequent relationships as they are detailed in the PSR. The PSR makes clear that Joan Harris has known only abuse and neglect throughout her life.

Despite all she has endured, Joan Harris is not an angry or a bitter person. Instead, she is a woman who chooses to focus on the positive parts of her life. Ultimately, she considers her past relationships to be blessing because they have led her to become a loving mother and grandmother. Numerous members of her family have called me to express that there is nothing more important to Ms. Harris in her life than her children and her grandchildren. As her nephew writes, "she is a good lady and does not need to be locked up." Def. Ex. A. Various people have called me to express their concern that your honor could never know the kindness and love that Ms. Harris bestows upon all of her children. Indeed, it was her love of family that led to the instant offense.

## II. THE INSTANT OFFENSE

It was early in the morning on April 25, 2010 that Joan Vivienne Harris boarded a flight in London bound for John F. Kennedy Airport. It was her 54th birthday. However, it was not her birthday that was on her mind that day. Instead, she was excited for a different reason. Fifteen years earlier, Ms. Harris was deported from her home in the United States. In a past life, Ms. Harris had been involved in drug trafficking. It seemed like a lifetime ago for Ms. Harris and she had worked hard every day since then to distance herself from her past. Today she was excited. She was excited to see her children again. She was excited to visit a country that used to be her home. Most of all though, she was excited to meet her grandchildren for the first time. Today Ms. Harris understands that on April 25, 2010, she committed a serious crime, though, back then, all she could think about was the excitement.

One of the unique immigration features of the relationship between the United States and the United Kingdom is the visa waiver program. In most cases, visitors seeking to enter the United States are required to obtain a visa before even being allowed to board a plane to the United States. However, through the visa waiver program, visitors from the UK can actually board a flight to the United States first and request permission to enter upon arrival. It is a courtesy extended between two countries on positive diplomatic terms whose citizens frequently visit each other. This unique program is how Ms. Harris was allowed to physically board a flight to JFK without being turned away. While the existence of this visa waiver program certainly does not excuse Ms. Harris's conduct (especially after having applied for and been denied permission to enter the United States in the past), it does help to explain Ms. Harris's thinking in this case. She simply thought that the immigration authorities might be more accommodating if she asked permission to enter the United States at the border, especially on her birthday.

When she arrived at JFK airport, she presented her authentic British Passport and asked for permission to enter the United States. Unlike the overwhelming majority of illegal re-entry cases, Ms. Harris did not attempt to conceal her identity. She simply handed her real passport to the customs agents and asked permission to enter. Because she made no attempt to hide her identity, it was not a difficult matter for the authorities to identify her and her criminal past. Rather than simply deny her application and send her home, the authorities instead opted to charge her with a crime. This is how Joan Harris will come to be sentenced before this Court on Friday.

The past seven months in incarceration has been a particularly acutely painful time for Ms. Harris and her family. What started as a joyous and hopeful trip to see her children and to meet her grandchildren has devolved into a criminal prosecution and another subsequent felony conviction. As her daughter, Nardia Greaves explains, "my mom is not a bad person. She only tryed [sic] to see her 4 kids that she has not seen in 20 years." Def. Ex. B.[1] While she certainly had criminal associations in her past, she had done everything in her power in the fifteen years since her deportation to distance herself from any illicit

---

[1] While we do not share Ms. Greaves's admittedly flippant attitude toward the instant offense. We ask the Court to recognize that Ms. Greaves wrote this letter only days after her mother's arrest and was understandably upset by the circumstances of her mother's incarceration.

3

behavior. Notably, while her past conviction does count with respect to her base offense level, her conviction is far enough in her past that it no longer counts in her criminal history computation. At the time of her arrest, Joan Harris was a loving grandmother, an ordinary person simply trying to make ends meet.

These past seven months have taken an excruciating toll on Ms. Harris in a way that even her past abuse did not. In her mind, she wanted only to see her grandchildren and instead she committed a new crime. This has led to depression and self loathing. Additionally, during her time at MDC, she has suffered from a painful cyst that she fears may be cancerous. Despite the best efforts of the government, for months, the MDC treated this painful cyst with only over the counter tylenol. In her mind, she has disappointed not only herself, but her family. As her daughter writes, "[t]his is a sad thing for my children, who are my grandsons. They have been waiting ten years to meet her, and now it seems longer for them when she is right in arm's reach." Def. Ex. C. These past months have truly been, to Ms. Harris, the worst time of her life.

At sentencing, Ms. Harris will speak to the Court directly about her offense. She will express to the Court in her own words how she is deeply remorseful for her conduct and now understands the seriousness of her actions in this case. We do not dispute that Ms. Harris's actions in this case are serious and deserve punishment. However, we respectfully ask the Court to understand Ms. Harris's actions within the context of her life to understand how her time already spent incarcerated has profoundly affected her. Both the individual circumstances of this case as well as the circumstances in her personal life make clear that this case falls well outside the heartland of a typical illegal re-entry case. Accordingly, we respectfully submit that a non-guidelines sentence of time-served is sufficient but not greater than necessary to meet the goals of sentencing in this case.

## CONCLUSION

For the reasons set forth above, we respectfully ask that the Court sentence Ms. Harris to time-served in this case.

Thank you for your consideration,

Len Hong Kamdang
Counsel to Joan Harris
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11216
(718)407-7414

Copies to:
Holly Kaplan
United States Probation Department (via First Class Mail)

Hillary Jager
United States Attorney's Office, E.D.N.Y. (via First Class Mail and ECF)

Joan Harris (MCC)

# DEFENDANT'S EXHIBIT A

To whom it may Concern, 4/29/2010
My name is Rondell James and I am writing this letter on behalf of my aunt Joan Harris. She a good lady and does not to be locked up. She only wanted to come visit her family. Please let her out. She sick and needs to be free.

Thank You,
Rondell James

# DEFENDANT'S EXHIBIT B

To whom it may concern,       4/29/2010

My name is Nardia Greaves and I am Joan Harris daughter. She has 3 other kids besides me. Let me say that my mom is not a bad person She only tryed to see her 4 kids that she has not seen in 20yrs. It was a mistake that she lied but who doesn't. To her understanding she was told she could come back in the ~~contry~~ country she really didn't understand the law about her status on entering the country. Please can you forgive her and just send her back to England she does not need to be in jail please..

Thank You;
Nardia K. Greaves

# DEFENDANT'S EXHIBIT C

To whom it may concern,

I am writing this letter in regards to Jean. I understand that she was arrested upon her arrival here to America on Tuesday, April 27, 2010. There were some misunderstandings about her deportation 20 years ago, in which that is a long time for someone to remember in old age. She stayed out of the country for 15 years more than she need too.

Which this is a sad thing for my children, whom are her grandsons. They have been waiting ten years to meet her and now it seems longer for them when she is right in arms reach. I hope that she is able to get out. Because she wants to see them as much as they do.

Thank You
Nicole Alee

609·475·5697